**CLEVELAND AREA BOARD
OF REALTORS, et al.,
Plaintiffs,**

v.

**The CITY OF EUCLID, Defendant.**

No. 1:92CV2714.

United States District Court,
N.D. Ohio,
Eastern Division.

May 30, 1997.

Arthur M. Kaufman, Robert J. Fogarty, Hahn, Loeser & Parks, Cleveland, OH, for Plaintiffs.

R. Todd Hunt, Walter & Haverfield, Cleveland, OH, John Francis Manley, Richard Anthony Wiegand, City of Euclid, Department of Law, Euclid, OH, for Defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Before the Court is plaintiffs' motion for attorneys' fees and costs in the amount of $390,078.71. For the reasons stated below, the Court grants the motion in the amount of $308,825.70.[1]

---

1. Euclid requests an evidentiary hearing. Because the Court is able to decide this matter on the briefs and affidavits before it, however, an evidentiary hearing is unnecessary. Moreover,

## I.

The Cleveland Board of Realtors ("CABOR"), Acacia Realty Professionals, Inc., Mary Jane Balazs, Brickman & Associates Realty, Inc., Century 21 Leo Baur Realtors, HRI, Inc. d/b/a Hilltop Realty, Frank J. Jochum d/b/a Frank J. Jochum Realty, and John Miller (collectively "CABOR") brought this action against the City of Euclid, Ohio ("Euclid"), challenging the constitutionality of three Euclid ordinances regulating the size, number and placement of commercial and noncommercial signs on residential property. On September 29, 1993, after a ten day bench trial, this Court found that the ordinances violated the first amendment, and permanently enjoined their enforcement. *Cleveland Area Bd. of Realtors v. City of Euclid*, 833 F.Supp. 1253 (N.D.Ohio 1993). On July 8, 1996, the Sixth Circuit affirmed this Court's judgment, and on September 19, 1996, denied Euclid's petition for rehearing. *Cleveland Area Bd. of Realtors v. City of Euclid*, 88 F.3d 382 (6th Cir.1996).

On October 11, 1996, CABOR filed this motion for attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and Rule 54(d) of the Federal Rules of Civil Procedure. CABOR seeks attorneys' fees in the amount of $341,673.74 and costs in the amount of $48,404.97, as well as additional fees incurred after September 30, 1996 in connection with the current motion.[2]

## II.

In any action to enforce 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs....." 42 U.S.C. § 1988. "If a plaintiff prevails in a suit covered by § 1988, fees should be awarded as costs 'unless special circumstances would render such an award unjust.'" *Kentucky v. Graham*, 473 U.S. 159, 164, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985) (citations omitted).

The amount of the fee awarded necessarily depends upon the facts of each case. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). A district court arrives at a reasonable fee by multiplying the "number of hours reasonably expended on the litigation" by a reasonable hourly rate. *Id.* at 433, 103 S.Ct. at 1939.[3] This calculation is based on the rates and practices "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Missouri v. Jenkins*, 491 U.S. 274, 286, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989) (citing *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11). Any hours that were not reasonably expended are excluded from the calculation. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40. The party seeking the award has the burden of submitting evidence supporting the hours and rates claimed. *Id.* at 433, 103 S.Ct. at 1939.

### A. Fees

CABOR seeks the following fees in connection with its retention of the Cleveland law firm of Hahn Loeser & Parks ("Hahn Loeser") in this matter:

*Trial level* (roughly from October 1, 1992—September 30, 1993):
*Attorneys*

| | | | |
|---|---|---|---|
| RJ Fogarty: | 328.20 hrs. @ | 205–215/hr = | 69,985.00 |
| AM Kaufman: | 701.10 hrs. @ | 125–130/hr = | 90,682.00 |
| RM Kochis: | 946.09 hrs. @ | 95–100/hr = | 93,763.00 |
| MT Cawley: | 135.10 hrs. @ | 95–100/hr = | 13,041.00 |

because Euclid chose not to present the Court with any evidence in response to the motion, it has waived any right to an evidentiary hearing. *See Blum v. Stenson*, 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541, 1545 n. 5, 79 L.Ed.2d 891 (1984).

2. Although CABOR requests fees and costs in connection with the preparation of the fee petition, it has not provided the Court with any information concerning the fees and costs incurred. Accordingly, CABOR may file a supplemental motion for attorneys' fees and costs within twenty (20) days of the receipt of this order.

3. This amount, known as the "lodestar," may be adjusted upward in certain circumstances. *See id.* at 434, 103 S.Ct. at 1939–1940. CABOR does not request an upward adjustment, however.

*Paralegals*

| | | | | | |
|---|---|---|---|---|---|
| SA Jarosz: | 31.60 hrs. | @ | 83/hr | = | 2,622.80 |
| NS Prodan: | 266.80 hrs. | @ | 80–83/hr | = | 22,060.40 |
| HD Neubert: | 14.80 hrs. | @ | 78/hr | = | 1,154.40 |
| ED Tropf: | 15.30 hrs. | @ | 75–78/hr | = | 1,191.60 |
| JE Grim: | 49.50 hrs. | @ | 73/hr | = | 3,613.50 |
| **TOTAL for trial level:** 2,489.30 hrs. | | | | = | **$298,113.70** |

*Appellate Level* (fixed fee arrangements)

| | |
|---|---|
| Preparation of initial appellate briefs/oral argument: | 30,000.00 |
| Post appeal brief in opposition to briefs of Amici municipal associations: | 5,000.00 |
| Brief in opposition to Euclid's petition for rehearing: | 5,000.00 |
| Additional misc. fees: | 3,560.04 |
| **TOTAL for appellate level:** | **$43,560.04** |

Euclid contends, first, that this request should be denied outright because it is shocking to the conscience. This Court, however, does not find the request shocking in light of the nature and length of this litigation, and therefore moves on to Euclid's second contention: that the fees should be reduced. Euclid asserts five main grounds for reducing the fees requested by CABOR.[4]

First, Euclid argues that time spent on three of the four claims asserted in the complaint should be discounted because CABOR did not prevail on those claims. In ruling for CABOR on its first amendment claim, this Court did not reach the three alternative theories asserted by CABOR. This does not justify a reduction of fees, however, because the three alternative claims were based on the same set of facts as the first amendment claim, on which CABOR fully prevailed. *See Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940 (lawsuit asserting related legal theories based on a common core of facts "cannot be viewed as a series of discrete claims"). Rather,

> [i]n these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every conten-

tion raised in the lawsuit. Litigants in good faith may raise alternative grounds for a desired outcome, and the court's rejection or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* Here, CABOR fully achieved its desired outcome, and fees in connection with time spent on alternative grounds asserted in the complaint are properly included in the award.

Second, Euclid challenges the documentation offered by CABOR, arguing that it does not provide enough detail. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. Although counsel is not expected to record in great detail how each minute of the day is spent, the general subject matter should be identified. *Id.* at 437 n. 12, 103 S.Ct. at 1941 n. 12. The documentation "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile & Composition Roofers v. G & M Roofing*, 732 F.2d 495, 502 n. 2 (6th Cir.1984).

---

4. Euclid does not contest the hourly rates charged by Hahn Loeser's attorneys. The reasonableness of those rates, as well as the flat rate on appeal, is supported by affidavit. *See* Aff. of D Hammer; Supp. Aff. of D. Hammer.

It is beyond dispute that a reasonable attorney's fee includes compensation for the work of paralegals. *See Jenkins*, 491 U.S. at 285, 109 S.Ct. at 2470; *Northcross v. Board of Educ. of Memphis City Schools*, 611 F.2d 624, 639 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). Euclid contends that reimbursement for paralegal time must be limited to the amount actually paid to the paralegals. This is incorrect. Paralegal time, like attorney time, is measured in comparison to the market rate, if the prevailing practice in the area is to bill paralegal time separately at market rates. *See Jenkins*, 491 U.S. at 286–89, 109 S.Ct. at 2470–72. Here, CABOR has submitted evidence establishing that such was the prevailing practice in the Cleveland area, and that the rates claimed are at or below the market rates for similar work. *See* Second Supp. Aff. of D. Hammer.

Here, although counsel specified the general subject matter of tasks performed, the billing records, which itemize time on a daily basis, rather than by task, make it impossible to determine the amount of time spent on each task. Because numerous entries are "lumped" together under one total, "the court is left to approximate the amount of time which should be allocated to each task," *In re Olson,* 884 F.2d 1415, 1428 (D.C.Cir. 1989), and is unable to determine the reasonableness of many of the hours expended. Furthermore, this "lumping" makes it more difficult to evaluate the reasonableness of the flat rates charged on appeal, since it is more difficult to ascertain the precise nature of the work on which those rates are based. The total request is reduced by 10% for this insufficient documentation. *See, e.g., id.* (reducing lodestar by 10% for insufficient documentation and excessive conferences); *Walker v. Coughlin,* 909 F.Supp. 872, 881 (W.D.N.Y.1995) (15% reduction for inadequate documentation); *Connecticut Hosp. Ass'n v. O'Neill,* 891 F.Supp. 687, 691 (D.Conn.1994) (10% reduction for vague entries); *Ragin v. Harry Macklowe Real Estate Co.,* 870 F.Supp. 510, 520 (S.D.N.Y.1994) (30% reduction for inadequate documentation and duplicative claims).[5]

■ Third, Euclid argues that many of the hours expended by Hahn Loeser are excessive and duplicative and should thus be excluded from the calculation. The Court notes at the outset that this was a complex first amendment case involving nine plaintiffs, spanning over four years, and culminating in a victory with wide-ranging impact on the first amendment rights of individuals in communities in and beyond Euclid. Such an action should result in a significant award to plaintiffs. Moreover, Euclid defended the action in an extremely litigious posture which

necessitated hours and hours of extra work for counsel.[6] "[D]efense counsel 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'" *Knop v. Johnson,* 712 F.Supp. 571, 578 (W.D.Mich.1989) (quoting *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)).

Even with this in mind, however, after a detailed review of the billing records, the Court finds numerous instances of excessive and duplicative billing by both attorneys and paralegals. For example, the record indicates that before the complaint was filed, there were no less than thirty intra-office conferences between attorneys, generally billed to two or more attorneys. Although counsel is expected to undertake a thorough review of the facts and the law before filing a complaint, the Court finds over thirty such conferences to be excessive, especially when many are described simply as "regarding status." *See, e.g., In re Olson,* 884 F.2d at 1429 (deducting percentage for "plethora of conferences, most often denoted simply as 'strategy' conferences, consuming the time of several attorneys who bill at very high rates"); *Weinberger v. Great N. Nekoosa Corp.,* 801 F.Supp. 804, 819 (D.Me.1992) (percentage deduction for co-counsel conferences).

As another example of excessive and duplicative hours billed at the trial level, the Court notes the inordinate number of entries by different attorneys between 1/26/93 and 2/10/93 for review, revision and proofreading of a single reply brief. The record reveals instances of excessive hours by paralegals as well. For example, on 12/22/92, paralegal N.S. Prodan billed 16.00 hours for "attend[ing] to preparation for filing of complaint, motion for preliminary injunction and

---

**5.** Courts have recognized the impracticality of specifying each and every hour to be excluded in a civil rights fee application such as this one, in which voluminous billing records must be examined. For this reason, most circuits, including the Sixth, have authorized across-the-board fee reductions as an appropriate method of "trimming fat from a fee application." *New York State Ass'n for Retarded Children, Inc: v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983). *See. e.g., Kelley v. Metro. County Bd. Of Educ.,* 773 F.2d 677, 683 (6th Cir.1985), *cert. denied,* 474 U.S. 1083, 106

S.Ct. 853, 88 L.Ed.2d 893 (1986); *Northcross,* 611 F.2d at 641; *Gates v. Deukmejian,* 987 F.2d 1392, 1399 (9th Cir.1992); *Jacobs v. Mancuso,* 825 F.2d 559, 562 (1st Cir.1987); *Daggett v. Kimmelman,* 811 F.2d 793, 797–98 (3d Cir.1987); *Tomazzoli v. Sheedy,* 804 F.2d 93, 98 (7th Cir. 1986).

**6.** For example, Euclid twice amended its ordinance on the eve of a scheduled trial date.

restraining order, discovery requests and other pleadings," and on 12/23/92, Prodan billed 3.00 hours for "attend[ing] to filing of complaint, motion for preliminary injunction and restraining order and discovery requests." Due to these and other instances of excessive and duplicative work, the Court deducts 10% across-the-board from the trial level fee request.[7] *See, e.g., Kelley,* 773 F.2d at 683 (upholding 10% reduction for duplicative work); *Northcross,* 611 F.2d at 641 (5% reduction for unnecessary duplication); *Princeton Univ. Press, MacMillan, Inc. v. Michigan Document Serv.,* 869 F.Supp. 521, 524 (E.D.Mich.1994) (10% reduction for excessive hours); *Oxford Venture Fund Ltd. Partnership v. CIT Group/Equipment Fin., Inc.,* 1990 WL 176102, *3 (S.D.N.Y.) (percentage deduction for excessive hours, including numerous co-counsel conferences). The Court finds that this reduction eliminates hours unreasonably expended while allowing recovery for the great majority of hours properly spent in the protracted litigation of this important matter.

■ Fourth, Euclid argues that CABOR should receive a deduction for overstaffing at depositions and trial. It appears from the record that one or two attorneys were generally present at depositions, and that two or three attorneys and one paralegal were present during each day of trial. Considering the nature of this case, the number of exhibits admitted at trial (over 150), and the "Stalingrad defense" mounted by Euclid, this Court finds the staffing to be entirely reasonable. *See Lipsett v. Blanco,* 975 F.2d 934, 939 (1st Cir.1992).

■ Finally, Euclid contends that Hahn Loeser has billed clerical and secretarial tasks at attorney rates. "[C]lerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them." *Lipsett,* 975 F.2d at 940 (citing *Jenkins,* 491 U.S. at 288 n. 10, 109 S.Ct. at 2472 n. 10). Here, the record indicates that tasks that could easily have been done by a secretary or

paralegal were sometimes billed to attorneys, though not as often as Euclid contends. Among the instances of such billing are the following: R.M. Kochis 12/2/92 ("distribute copies of ordinances, previous memos, research; attention to file and setting up of litigation files"); R.M. Kochis 1/8/93 ("attention to deposition files"); R.M. Kochis 1/11/93 ("attention to files"); M.T. Cawley 1/18/93 ("attend to summary of depositions"); R.M. Kochis 2/09/93 ("phone call Judge Aldrich's Bailiff regarding Case Management"); A.M. Kaufman 4/13/93 ("Attention to fax of supplemental trial brief to R.J. Fogarty; proofread regarding same"); R.M. Kochis 5/19/93 ("File organization and upkeep"); A.M. Kaufman 5/19/93 ("phone call to Naikang Tsao (J. Aldrich's law clerk) regarding schedule"); R.M. Kochis 6/18/93 ("Phone call Court Clerk regarding status of transcripts"); R.M. Kochis 9/17/93 ("miscellaneous filing and file organization"); R.M. Kochis 11/16/93 ("File and serve notices of appearance"); A.M. Kaufman 12/07/93 ("Attention to obtaining copy of docket and motion of City"). Due to the relatively infrequent billing of such tasks at attorney rates, the Court deducts 2% from the amount of the trial level fee request attributable to hours billed at attorney rates.[8] *See Mautner v. Hirsch,* 831 F.Supp. 1058, 1076 (S.D.N.Y.1993) (reduction for clerical and paralegal tasks billed to attorneys).

In sum, the total fee request for attorney and paralegal time is reduced by 10% for insufficient documentation (.10 × $341,673.74 = $34,167.37); the fee request for attorney and paralegal time at the trial level is reduced 10% for excessive and duplicative hours (.10 × $298,113.70 = $29,811.37); and the fee request for attorney time at the trial level is reduced by 2% for clerical and secretarial work (.02 × $267,471.00 = $5,349.42). Therefore, the request is reduced by a total of $69,328.16, for a total of $272,345.58.

### B. Costs and Expenses

CABOR seeks $48,404.97 in costs and expenses, including $144.00 for court fees;

---

7. This reduction does not apply to the flat rate fees incurred on appeal. This Court finds that counsel adequately compensated for any excessive or duplicative hours at the appellate level through the use of flat rates resulting in consider-

ably lower fees than would have been incurred based on the actual time expended on the appeal.

8. This reduction does not apply to the flat-rate appellate fees. *See supra* note 7.

$16,610.51 for costs in connection with court reporting, depositions and transcripts; $3,429.86 for computerized research; $8,513.47 for expert witness fees; $10,473.64 for photocopying; $1,012.57 for communication; $3,216.37 for overtime (clerical); $312.69 for auto mileage and parking; and $4,691.86 for "costs and disbursements incurred on appeal."

In *Northcross*, the Sixth Circuit explained the two types of expenses recoverable by prevailing parties in civil rights litigation.

> There are two separate sources of authority to award out-of-pocket expenses. Some expenses are included in the concept of attorney's fees, as "incidental and necessary expenses incurred in furnishing effective and competent representation," and thus are authorized by section 1988.... The authority granted in section 1988 to award a "reasonable attorney's fee" included the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services. Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of § 1988.
>
> Other costs are on a different footing. These include those costs incurred by a party to be paid to a third party, not the attorney for the case, which cannot reasonably be considered to be attorney's fees ... These include, among others, docket fees, investigation expenses, deposition expenses, witness expenses, and the costs of charts and maps. Most of these expenses have long been recoverable, in the court's discretion as costs, pursuant to 28 U.S.C. § 1920....

*Northcross*, 611 F.2d at 639 (citations omitted) The expenses sought by CABOR are of both types.

### 1. Expenses recoverable under 42 U.S.C. § 1988

■ An attorney's fee under § 1988 includes those expenses that are incurred in order for the attorney to render his or her legal services and that would normally be charged to a fee-paying client. *See. e.g., id.;*

*Abrams v. Lightolier*, 50 F.3d 1204, 1225 (3d Cir.1995); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.1994); *Associated Builders & Contractors v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir.1990); *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir.1983). Thus, "reasonable expenses, though greater than taxable costs, may be proper." *Harris*, 24 F.3d at 20. Routine expenses which are incorporated into attorneys' rates as routine office overhead are not recoverable, however. *See, e.g., Abrams*, 50 F.3d at 1225; *Kuzma v. IRS*, 821 F.2d 930, 933–34 (2d Cir.1987); *Knop*, 712 F.Supp. at 588.

### Computerized Research

■ Although the cost of computerized research is not recoverable under § 1920, this Court finds that it is properly considered as part of an attorney's fee under § 1988. *See, e.g., United States v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 173 (2d Cir.1996); *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1440–41 (7th Cir.1994); *In the Matter of Continental Illinois Secs. Litig.*, 962 F.2d 566, 570 (7th Cir.1992); *Gregory v. Weigler*, 873 F.Supp. 1189, 1199 (C.D.Ill.1995); *Aloha Tower Associates Piers 7, 8, and 9, Ltd. Partnership v. Millennium Aloha, Inc.*, 938 F.Supp. 646, 649 (D.Hawai'i 1996); *Hurley v. Atlantic City Police Dep't*, 1996 WL 549298, *3 (D.N.J.); *Brown v. Pro Football. Inc.*, 839 F.Supp. 905, 916 (D.D.C.1993), *modified on other grounds*, 846 F.Supp. 108 (D.D.C.1994). This Court agrees with the reasoning of the Seventh Circuit in *Haroco*:

> The added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching. Therefore, we see no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on a computer and bills for both the time and the computer fee. In both cases the total costs are attorney's fees....

*Haroco*, 38 F.3d at 1440–41.

CABOR's request for reimbursement of expenses for computerized legal research is reasonable and adequately documented.

Furthermore, it is supported by an affidavit stating that the expenses, which were indeed billed to CABOR, are of the type normally billed separately to clients. *See* Second Supp. Aff. of D. Hammer. Therefore, this Court, following other courts allowing prevailing parties to be reimbursed under § 1988 for computer research fees, awards CABOR $3,429.86 in expenses for computerized legal research.

### Photocopying and communication charges

 CABOR requests $10,473.64 for photocopying expenses, and $1,012.57 for "communication charges," including expenses incurred for fax transmittals, messenger services, postage and telephone use. It is clear that such expenses, if reasonable, are recoverable under § 1988, *see, e.g., Northcross,* 611 F.2d at 639, and Euclid does not contend otherwise. Rather, Euclid argues that these expenses should be disallowed because they are not properly documented. Contrary to Euclid's contention, CABOR has adequately documented these expenses with individual receipts and billing records.[9] These charges were actually incurred, and are of the type normally charged separately to clients. *See* Second Supp. Aff. of D. Hammer. Furthermore, this Court finds the expenses requested to be entirely reasonable given the nature and history of this litigation. Therefore, the Court awards expenses related to photocopying and communication in full.

### Clerical Overtime

 CABOR requests reimbursement for payments made for clerical overtime ($3,216.37). This Court considers these expenses to be part of firm overhead, and thus, they are not recoverable. There is no evidence that it is the prevailing practice in the Cleveland area to bill the client separately for such expenses, nor is there any evidence that the rates at issue are on par with market rates. *See* Second Supp. Aff. of D. Hammer. Accordingly, expenses for clerical overtime are disallowed.

---

9. It would be unreasonable to require a firm to produce documentation of the exact item copied

### Other expenses

 CABOR also seeks $4,691.86 for "costs and disbursements on appeal." This figure includes the same type of expenses incurred at the trial level and discussed above, such as postage, travel, computerized research, communication and photocopies. Although Euclid objects again on grounds of insufficient documentation, the Court finds these expenses to be reasonable and well-documented, and awards them in full pursuant to § 1988.

### C. Costs recoverable under 28 U.S.C. § 1920

Federal Rule of Civil Procedure 54(d) provides for an award of costs other than attorneys' fees to prevailing parties such as CABOR. Rule 54(d) creates a presumption in favor of an award of costs. *White & White, Inc. v. American Hosp. Supply Corp.,* 786 F.2d 728, 730 (6th Cir.1986). The court's discretion to award costs is limited, however, by the statutory definition of costs contained in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons,* 482 U.S. 437, 441–42, 107 S.Ct. 2494, 2497–98, 96 L.Ed.2d 385 (1987). That section provides that a judge may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

### Expert Witness Fees

CABOR contends that § 1920 enables it to recover expert witness fees. Specifically,

---

and its relation to the case in every instance of photocopying over the course of years.

CABOR seeks $5,119.00 for services rendered by J. Everett Prewitt, $1,518.47 for services rendered by G. Gilmore, and $1,876.00 for services rendered by R. Schwab.

The only witness costs that may be taxed under 28 U.S.C. § 1920 are attendance, travel, and subsistence fees as specified in 28 U.S.C. § 1821. *Crawford Fitting,* 482 U.S. at 445, 107 S.Ct. at 2499. "[W]hen a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary." *Id.* at 439, 107 S.Ct. at 2496. The Supreme Court has held that " § 1988 conveys no authority to shift expert fees." *West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 102, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68 (1991).[10] Therefore, CABOR is limited to expert fees authorized by § 1920 and § 1821.

■ Most of CABOR's expert witness fees were incurred in connection with consultation by three expert witnesses. "None of the categories of expenses listed in § 1920 can reasonably be read to include fees for services rendered by an expert employed by a party in a nontestimonial capacity." *Id.* at 87, 111 S.Ct. at 1141. Therefore, CABOR may not recover any expert witness fees in connection with the consulting services of Gilmore, Prewitt, or Schwab.

Section 1821(b) provides that each witness shall receive $40.00 per day for each day's attendance at court or at a deposition, and shall also be paid for travel to and from the place of attendance. Grover Gilmore was deposed on 3/12/93, and testified at one day of trial. He incurred $16.25 in parking expenses in connection with his deposition and trial testimony. Therefore, the Court awards $96.25 in expert witness costs for Gilmore. J. Everett Prewitt attended two days of trial and was deposed on 3/15/93. There is no record of any travel expenses

incurred in connection with his testimony. Therefore, the Court awards $120 in expert witness costs for Mr. Prewitt. Finally, Richard Schwab served only as a consultant, and did not testify at trial or in deposition. Therefore, CABOR may not recover any costs in connection with its retention of Mr. Schwab.

*Court Reporter Services*

■ CABOR seeks $16,610.51 for payments to the court reporter for taking and transcribing depositions. "Ordinarily, the costs of taking and transcribing depositions reasonably necessary for the litigation are allowed to the prevailing party." *Sales v. Marshall,* 873 F.2d 115, 120 (6th Cir.1989). Euclid does not contest that the taking of the depositions at issue was reasonably necessary to this litigation; rather, Euclid argues that it should not be charged for the ordering of "expedited" transcripts, or for "finance charges" billed to the firm.

■ The only deposition transcripts requested on an "expedited" basis were those requested just prior to a scheduled preliminary injunction hearing and/or trial. In those situations, the added cost of expedited transcripts was reasonably necessary for the litigation, and therefore, the Court taxes that cost. Unexplained finance charges, however, may not be taxed under § 1920. Therefore, the Court disallows "finance charges" billed to the firm totaling $411.26. Accordingly, Euclid is taxed $16,199.25 in court reporter and deposition costs.

The following costs and expenses are awarded under § 1988 and 1920:[11]

| | |
|---|---|
| Court filing and other fees: | 144.00 |
| Court Reporters/Depositions/Transcripts: | 16,199.25 |
| Computerized Research: | 3,429.86 |
| Expert Witnesses: | 216.25 |
| Photocopying: | 10,473.64 |
| Communication: | 1,012.57 |
| Auto Mileage and Parking: | 312.69 |
| Costs and Disbursements on Appeal: | 4,691.86 |
| TOTAL COSTS/EXPENSES: | $36,480.12 |

10. The Civil Rights Act of 1991 amended § 1988 to provide for expert fees in an "action or proceeding to enforce a provision of section 1981 or 1981a." *See* 42 U.S.C. § 1988(c). For the other civil rights statutes to which § 1988 applies, including § 1983, the amendment left *Casey's* holding intact.

11. Included in this amount are expenses allowable under § 1988 for travel expenses, and costs allowable under § 1920 for film fees, to which Euclid does not object.

### III.

In sum, the Court awards CABOR $308,-825.70 in attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, and Fed.R.Civ.P. 54(d). Euclid is hereby ordered to pay to CABOR the sum of $ 308,-825.70.

This order is final and appealable.

IT IS SO ORDERED.